**Dorothea A. STEVENSON, Plaintiff,**

v.

**The INDUSTRIAL COMMISSION OF UTAH, Defendant.**

**No. 17575.**

Supreme Court of Utah.

Jan. 14, 1982.

Anthony M. Thurber, Salt Lake City, for plaintiff.

David L. Wilkinson, Atty. Gen., Frank V. Nelson, Salt Lake City, for defendant.

PER CURIAM:

The plaintiff, Stevenson, applied for "occupational disease" benefits on account of an alleged contraction of "industrial asthma" while employed by the Deseret Pharmaceutical Company between 1972 and 1976. On Christmas Day of 1976, plaintiff experienced an onset of a severe episode of asthma which caused her to leave work until May, 1977. She worked again until October, after which she had to leave her employment permanently. She contended that her job of processing and packaging catheters was attended by fluorocarbon resin particulants emitted into the air, which she breathed, and which she urges was the cause of her "occupational disease."

Plaintiff's brief recounts the evidence favorable to her claim to the exclusion of

expert testimony negating her employment as a source of her ailment, which the trial examiner and the Commission apparently believed in denying her an award.

The pertinent section giving rise to a legitimate and compensable "occupational disease" is U.C.A., 1953, 35-2-27. The only subdivision thereof that conceivably could authorize an award for "asthma" is subsection (28) which reads as follows:

Such other diseases or injuries to health which directly arise as a natural incident of the exposure occasioned by the employment, provided however, that such a disease or injury to health shall be compensable only in those instances where it is shown by the employee or his dependents that all of the following named circumstances were present: (1) a direct causal connection between the conditions under which the work is performed and the disease or injury to health; (2) the disease or injury to health can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the employment; (3) the disease or injury to health can be fairly traced to the employment as to the proximate cause; (4) the disease or injury to health is not of a character to which the employee may have had substantial exposure outside of the employment; (5) the disease or injury to health is incidental to the character of the business and not independent of the relation of the employer and employee; and (6) the disease or injury to health must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before discovery. No disease or injury to health shall be found compensable where it is of a character to which the general public is commonly exposed.

Plaintiff points to evidence that she had to leave work because of fumes she claimed affected her. Plaintiff could not point to any of the other 27 subsections naming compensable and known ailments, such as anthrax, glanders, and a variety of other element poisoning that caused her suffering.

The medical testimony varied somewhat as to diagnosis, but the record reflects an abundance of believable, undisputed evidence to the effect that the applicant's condition could have been caused by pressure, emotion, nerves, etc., common to people that do not work in processing and packaging catheters. It is suggested in the record that there is no history of others working at the same job being affected as was the plaintiff here.

Plaintiff's own doctor, one Rinzetti, said that "the best case that can be made in Mrs. Stevenson's favor" was that her environment at Deseret "aggravated an underlying asthma by exposure to *non-specific irritants*,"—which is not compensable under the act. *Pintar v. Industrial Commission*, 14 Utah 2d 276, 382 P.2d 414 (1963) and *Edlund v. Industrial Commission*, 122 Utah 238, 248 P.2d 365 (1952). Rinzetti conceded that the following diagnosis of the expert witness, Dr. Griffith, was correct:

I think the striking things lacking in this case are any indication that she was exposed to significant chemical and particulate matter. Without evidence of that it's hard to make a story for occupational asthma. Secondly I think there is no known incidence of pulmonary disease at Deseret Pharmaceutical and I would suspect there's no incidence of known asthma in industries involving the same types of plastics. Thirdly her asthma has not resolved following cessation of employment, which is a relative point.

\* \* \* \* \* \*

[A]sthma is generally not considered a totally disabling disease. Even in relatively severe forms we rarely make recommendations other than the patients avoid dusty or chemically contaminated areas. We do not recommend they stop work with very rare exceptions. She certainly does not fit into that category of exception.

There would appear to be no reversible error based on the record or an abuse of discretion; hence, we affirm the order of the Commission.